# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL CASE NO. 1:11cv309

| | |
|---|---|
| STEPHEN PENDLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF DECISION AND ORDER

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] and the Defendant's Motion for Summary Judgment [Doc. 15].

## PROCEDURAL HISTORY

The Plaintiff applied for disability benefits on November 27, 2006, and he protectively filed an application for supplemental security income on December 13, 2006, alleging an onset date of January 2, 2004 and disability due to ulcerative colitis, pancolitis, depression and anti-social behavior. [Administrative Transcript (Tr.) 55-56, 126-134, 161, 165]. The claims were denied on February 20, 2007 and again on June 28, 2008 after

reconsideration. [Tr. 55--66, 68-74].

On July 26, 2007, after obtaining counsel, the Plaintiff requested a hearing before an Administrative Law Judge (ALJ). [Tr. 76-77]. A hearing was held on March 6, 2009 at which time testimony was received from the Plaintiff, his girlfriend and a vocational expert. [Tr. 20-54]. The ALJ issued a decision on September 17, 2009 in which he denied the Plaintiff's applications. [Tr. 11-19]. Although the Plaintiff requested that the Appeals Council review the ALJ's decision, it denied review on September 20, 2011 thus rendering the ALJ's decision the final decision of the Commissioner. [Tr. 1-5]. The Plaintiff timely sought judicial review by filing this action on November 14, 2011.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes federal courts to review the Commissioner's denial of social security benefits.

> Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In reviewing for substantial evidence, [this Court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]. Where conflicting evidence

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].

Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) superseded by regulation on other grounds 20 C.F.R. §416.927(d)(2)).

> The Commissioner uses a five-step process to evaluate disability claims. Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. The claimant has the burden of production and proof in Steps 1-4. At Step 5, however, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience. If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps.

Hancock v. Astrue, 667 F.3d 470, 472-73 (4th Cir. 2012) (internal quotations and citations omitted).

Rather than separately stating the applicable facts, the Court will incorporate those facts into the legal analysis.

## DISCUSSION

In this case, the ALJ found at Step 1 that the Plaintiff has not engaged in substantial gainful activity since his alleged onset date. [Tr. 11]. At Step 2, the ALJ found that the Plaintiff has severe impairments of

ulcerative colitis, gastric erosions and thoracic strain. [Id.]. The ALJ determined at Step 3 that the Plaintiff does not have impairments or a combination thereof that meets or equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 13]. The ALJ then determined that the Plaintiff retains the Residual Functional Capacity (RFC)[1] to perform light work, except that he requires the option to sit or stand at will about every sixty minutes and is restricted to no more than frequent postural activities such as climbing, balancing, stooping, crouching, kneeling and crawling.[2] [Tr. 16-17]. Based on these conclusions, the ALJ found that the Plaintiff is unable to performing any of his past relevant work. [Tr. 18]. The ALJ then proceeded to consider the Plaintiff's age, education, work experience and RFC as well as the testimony of a vocational expert in order to conclude that the Plaintiff can perform other work that exists in significant numbers in the national economy. [Id.]. The ALJ thus found that the Plaintiff is not disabled.

The Plaintiff claims the ALJ should have determined that his generalized anxiety disorder and borderline personality disorder are severe impairments and thus should have evaluated their effects on his RFC. The

---

[1] RFC is defined by the Social Security Regulations as the most that an individual is able to do despite his or her impairments. 20 C.F.R. §§404.1545(a), 416.945(a).

[2] See 20 C.F.R. §404.1567(b) (defining light work).

Plaintiff bears the burden of producing substantial evidence that his conditions are severe impairments which have lasted or can been expected to last for twelve consecutive months.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).  Social Security regulations state that there is no disability if the claimant does "not have any impairment or combination of impairments which significantly limit[ ] [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §404.1520(c).  Basic work activities are those that are necessary to do most jobs, such as walking, standing, sitting; the capacity to see, hear, speak, understand, carry out and remember simple instructions; and the ability to use judgment.  20 C.F.R. §404.1521(b).

The Plaintiff does not dispute that the record contains no evidence of the Plaintiff having sought or received any mental health treatment with the sole exception of a prescription for Paxil in 2000 when he separated from his wife. [Tr. 257-258]. Instead, as to this issue the Plaintiff relies solely on the lay opinions of his brother and girlfriend, his own reports, and consultative examinations by state agency physicians.

The Plaintiff's brother reported that the Plaintiff has always had a difficult personality but attributed an equal amount of the Plaintiff's problems to his physical ailments.  [Tr. 173-174].  The Plaintiff's girlfriend

reported that his colitis causes him to spend a lot of time in the bathroom and noted that he does not like to go out in public. [Tr. 153-160]. Although the Plaintiff argues that his refusal to go places and be with people is the result of his personality disorder, the record shows that his alleged physical issues have been equally reported as the reason for his reclusive behavior. [Id.; Tr. 411 ("He has a hard time going places and feeling comfortable due to his physical stomach issues.")]. The Plaintiff's girlfriend also noted the Plaintiff's difficulties getting along with people and stated that she had seen him be rude to police officers as well as others. [Tr. 158-159]. The Plaintiff claims to have lost several jobs because he could not get along with co-workers and bosses. [Tr. 198]. He did note, however, that for a five year period he held a job in a shoe manufacturing plant until it closed. [Tr. 166-167]. These reports of personality disorders, moreover, are not substantiated by any objective medical evidence.

The Plaintiff claims that the ALJ failed to give proper weight to the opinions of state agency consultative examiners, and as a result the ALJ did not recognize Plaintiff's mental health conditions as severe impairments. [Doc. 12 at 12-13].

The Plaintiff received a Comprehensive Clinical Psychological Evaluation from Michelle Coates, M.A. (Coates) on January 30, 2007. [Tr.

364]. One of the first things recorded by Coates was that the Plaintiff told her he had been driven to the appointment by his girlfriend. [Id.]. Coates recorded, however, that she had personally watched him drive in and park. [Id.]. She also saw him drive away after the examination. [Id.]. Coates reported that the Plaintiff had good eye contact and was energetic. [Id.]. When asked what would interfere with employment, the Plaintiff referred only to his physical symptoms. [Tr. 365; 368]. Coates recorded the Plaintiff's historical reports of an inability to get along with co-workers and bosses but noted that he had never received mental health treatment. [Tr. 365-366]. Coates did not diagnose the Plaintiff with borderline personality disorder, noting that further assessment would be required to obtain such a diagnosis. [Tr. 368].

> Based on presentation, intellectually and cognitively, it is believed that the claimant could satisfactorily complete work-related tasks. At this time, the claimant's anxiety does not appear severe enough to significantly cause problems in a work setting. However, there is some concern about his Borderline Personality Disorder traits causing problems at work as they have in the past.

[Tr. 368].

Dr. Cal VanderPlate (VanderPlate) completed a Psychiatric Review Technique for the Plaintiff on February 16, 2007. [Tr. 372]. He relied almost exclusively on Coate's opinion and did not examine the Plaintiff.

7

VanderPlate noted that the Plaintiff purportedly had an anxiety related disorder "per [claimant's] report" which needed to be ruled out. [Tr. 377]. He also noted that borderline personality disorder needed to be ruled out. [Tr. 379]. VanderPlate found only mild or moderate limitations with no episodes of decompensation. [Tr. 382]. VanderPlate recognized the Plaintiff's reports of depression and anti-social behavior but also noted that the Plaintiff was not receiving any mental health treatment and denied being depressed. [Tr. 384]. VanderPlate concluded:

> [Claimant] expressed well, engaging easily and spontaneously. Anxiety was not observed or reported. Affect normal. He appeared to be in a good mood. He described his mood as fair. Thought processes were logical and goal directed. He followed simple written and verbal instructions well, with no apparent comprehension problems. [Claimant's] anxiety does not appear severe enough to cause problems in a work setting. … [Claimant complained of] severe social anxiety. However, his report is not fully credible.

[Tr. 384].

Dr. Michael Hammonds (Hammonds) also completed a state agency consultation without examination, noting that the Plaintiff was found to be "engaging and spontaneous" "in a good mood" and "smiling". [Tr. 411]. "Anxiety was not seen." [Id.].

The ALJ accorded little weight to that portion of Coates' opinion referring to concerns about borderline personality disorder traits because

8

no such diagnosis was provided and the Plaintiff's conduct during his examination by Coates displayed no such traits. [Tr. 12]. The ALJ gave little weight to the opinions of VanderPlate and Hammonds that the Plaintiff had moderate impairment of social functioning, finding that the complete record showed no such impairments. [Tr. 12-13]. The ALJ thoroughly discussed the evidence of record related to the Plaintiff's mental health, citing Coates' opinion extensively. [Tr. 12]. The ALJ concluded that the Plaintiff's reports of mental health impairments were not borne out by objective medical evidence. First of all, there was no record of treatment for either an anxiety or personality disorder. Houghton v. Commissioner Social Sec. Admin., ___ Fed. App'x. ___, 2012 WL 3298201 (9th Cir. 2012) (lack of treatment supported conclusion that claimant exaggerated symptoms). "[A]n unexplained inconsistency between the claimant's characterization of the severity of [his] condition and the treatment [he] sought to alleviate that condition is highly probative of the claimant's credibility." Mickles v. Shlala, 29 F.3d 918, 930 (4th Cir. 1994); Hutchens v. Astrue, 433 Fed. App'x. 510 (9th Cir. 2011). Indeed, the Plaintiff's credibility was questioned by both Coates and VanderPlate. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ not "required to believe every allegation of disabling [condition], or else disability benefits would be

available for the asking").

The ALJ also found, however, that even if the Plaintiff did have borderline personality disorder traits, his lack of treatment and positive presentation during his examination with Coates showed that he had the ability to control the same. Ormon v. Astrue, __ Fed. App'x. __, 2012 WL 3871560 (1st Cir. 2012) (extensive treatment record belies malingering); Nowlin v. Commissioner, 2009 WL 700128 **8 (D.Ida. 2009) ("it is difficult to blindly accept" claimant's claims without medical records). "[A]n ALJ may discount a claimant's allegations if there is evidence that a claimant was a malingerer or was exaggerating symptoms for financial gain." Davidson v. Astrue, 578 F.3d 838, 844 (8th Cir. 2009) (internal quotation and citation omitted). The ALJ thus properly rejected the Plaintiff's reports regarding the severity of his symptoms. Hutchens, 433 Fed. App'x. 510; Williams v. Astrue, 2012 WL 1267890 (E.D.Va. 2012) ("To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function."). "[T]he Act and regulations require that an impairment be established by objective medical evidence that consists of signs, symptoms, and laboratory findings, and not only by an individual's statement of symptoms[.]" Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

The Plaintiff, who carries the burden through Step 4, has failed to show objective medical evidence that a condition of generalized anxiety disorder and borderline personality disorder caused more than a minimal effect on his ability to function. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003) (the determination at Step 2 is based on medical factors alone); Mastro, 270 F.3d at 177; Hancock v. Astrue, 2012 WL 1267888 **5 (M.D.N.C. 2012) (claimant must come forward with objective medical evidence of the impairment and of its severity). The Plaintiff has never received a diagnosis of borderline personality disorder and Coates' extraneous comments about such traits at the conclusion of her opinion constitute nothing more than surmise. Indeed, Coates declined to issue such a diagnosis.

The only evidence that these purported conditions constitute severe impairments comes from statements made by the Plaintiff, his brother and his girlfriend. "A claimant's statements regarding the severity of an impairment [are] not sufficient." Id.; Young v. Astrue, 2013 WL 474787 **9 (M.D.N.C. 2013). Moreover, to the extent that the testimony of Plaintiff's brother and girlfriend conflict with the medical evidence, this Court must defer to the Commissioner's decision of how to weigh that evidence. Jackson v. Astrue, 467 Fed. App'x. 214 (4th Cir. 2012).

Nonetheless, even if the ALJ erred by failing to find the Plaintiff's mental health to be a severe impairment, it is of no consequence. "Where an ALJ has already determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error, because, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation." Young, 2013 WL 474787 **10 (internal quotation and citations omitted); Jones v. Astrue, 2009 WL 455414 (E.D.N.C. 2009). Such was the case here since the ALJ did consider the Plaintiff's severe impairments of ulcerative colitis, gastric erosions and thoracic strain and continued with the sequential evaluation process. [Tr. 13-15]. "Under such circumstances, any alleged improper application of law at step two caused Plaintiff no prejudice." Young, 2013 WL 474787 **10 (citing Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007)) (other citations omitted). For these reasons this assignment of error must be overruled.

In his next assignment of error, the Plaintiff argues that the ALJ improperly assessed the medical opinions involved in his case. When an ALJ evaluates and weighs medical opinions, he or she considers (1) whether the physician examined the claimant; (2) the treatment

relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. Johnson, 434 F.3d at 653.

The Plaintiff argues that it was error for the ALJ to have accorded so little weight to Coates' comment that borderline personality disorder traits might inhibit work. It is first noted, however, no medical source, including Coates, diagnosed the Plaintiff with borderline personality disorder. Without such a diagnosis, there was no basis on which the ALJ could have afforded Coates' closing comment more weight. The evaluation provided by Coates was a "one-time, … consultative opinion." Baker v. Astrue, 2012 WL 517541 **6 (W.D.Va. 2012). "In the case of a consultative source, the ALJ has [wide] discretion, since only a treating source's opinion is entitled to controlling weight." Id. (citing 20 C.F.R. §§404.1527(d) & 416.927(d)). The ALJ specifically noted that Coates was not a treating medical provider and pointed to evidence in the record which demonstrated the Plaintiff's lack of borderline personality disorder traits. [Tr. 11-12]. He also pointed out that even Coates did not diagnose the Plaintiff with a borderline personality disorder. [Id.]. "An ALJ's determination as to the weight to be assigned to a [non-treating] medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious

inconsistencies' or has not given good reason for the weight afforded a particular opinion." Craft v. Apfel, 164 F.3d 624 **2 (4th Cir. 1998) (citation omitted). The Plaintiff's assignment of error as to the ALJ's treatment of Coates must therefore be rejected. Bryant *ex rel* Bryant v. Barnhart, 63 Fed. App'x. 90 (4th Cir. 2003) (ALJ must explain weight accorded non-treating physicians based on supporting evidence in the record for opinion and consistency thereof).

The Plaintiff made similar arguments concerning VanderPlate and Hammonds. The ALJ accorded little weight to their opinions that the Plaintiff had moderate mental health impairments, noting that neither had examined the Plaintiff and both relied on Coates' evaluations. Id. The ALJ also pointed to the evidence of record concerning the Plaintiff's ability to conduct himself properly, evidence which showed "little ongoing mental impairment." [Tr. 13]. Id. The Court does not find that the ALJ erred in his treatment of these non-examining state agency consultative opinions.

The Plaintiff's final assignment of error is to the ALJ's determination to give little weight to the opinion of his treating gastroentologist, Dr. Bukhari.

> Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given

controlling weight. Rather, according to the regulations promulgated by the Commissioner, a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Thus, by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.

Mastro, 270 F.3d at 178.

On November 21, 2006, Dr. Bukhari stated in a treatment note that the Plaintiff "is obviously not able to work at this time because of his severe universal ulcerative colitis." [Tr. 318]. The ALJ gave little weight to this statement because more recent medical records did not support a condition of colitis or symptoms which would interfere with the ability to work. [Tr. 16].

The last treatment note in the administrative record is dated March 2, 2009. [Tr. 492]. In that note, Dr. Mohammed, Dr. Bukhari's associate, examined the Plaintiff for complaints of colitis with pain and diarrhea about eight to ten times per day. [Id.]. Dr. Mohammed stated that current biopsies did not show colitis but he would prescribe Lialda. [Tr. 492-493]. Dr. Mohammed's notes state that there was to be a follow-up appointment

one month later, but there is nothing in the record to indicate that the appointment was kept.

In January 2009, the Plaintiff had a bout with diarrhea after drinking well water. [Tr. 437]. No diagnosis of colitis was made but it was noted that the Plaintiff had stopped taking one of his medications and was instructed to start again. [Id.]. There are no other treatment notes for 2009.

In September 2008, the Plaintiff was seen for abdominal pain but it was noted that a colonoscopy was normal and a "biopsy did not show any evidence of colitis." [Tr. 438]. An abdominal wall hernia was suspected. [Id.]. In July 2008, the Plaintiff was seen and reported that he had been doing well but had episodes of diarrhea. [Tr. 440]. In January 2008, the Plaintiff was seen for refills of his medication. [Tr. 414]. His colitis was reported as stable and controlled with medication at that time. [Id.].

On December 12, 2007, the Plaintiff had an evaluation done at the North Carolina Baptist Medical Center. [Tr. 480]. Dr. Healy recorded the Plaintiff's report of bilateral upper and lower quadrant abdominal pain which was at times fleeting and at other times, lasted for hours. [Id.]. "He has minimal appetite but has gained 50 pounds over the last one year." [Id.]. Dr. Healy modified the medications which he took for colitis. [Id. at 482].

In October 2007, the Plaintiff was seen for follow-up with Dr. Mohammed. [Tr. 442]. It was noted that "[w]e are not able to demonstrate any evidence of colitis." [Id.]. In September 2007, the Plaintiff's colitis was recorded as stable. [Tr. 415]. In July 2007, he was seen for a "flare up" of colitis which was controlled by medication "most of the time." [Tr. 419]. He was prescribed a prednisone taper. [Id.]. In April 2007, he was seen for refills of his medications and at that time, the colitis was considered stable and "mostly controlled." [Tr. 421]. In March 2007, he reported another bout of diarrhea but Dr. Mohammed noted there is no evidence of colitis. [Tr. 450]. "The patient was strongly advised not to take any herbal remedies." [Id.].

The Plaintiff's treatment records show that while he continued to have periodic bouts of diarrhea, his condition in March 2006, at the time of Dr. Bukhari's opinion, steadily improved over the years. Thus, the treating physician's 2006 opinion was no longer the most recent or accurate statement of the Plaintiff's ability to work. Pyles v. Astrue, 2012 WL 1165824 (W.D.N.C. 2012). At no time did any other physician opine that Plaintiff was disabled from work and, on at least one occasion, reference was made to the fact that the Plaintiff had, in fact, been working. [Tr. 438]. "[I]f a physician's opinion is not supported by clinical evidence or if it is

inconsistent with other substantial evidence, it should be accorded significantly less weight. Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178; Johnson, 434 F.3d at 654 n.5 ("The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence."); Raper v. Astrue, 2013 WL 438194 (M.D.N.C. 2013). Moreover, to the extent that Dr. Bukhari gave an opinion as to the ultimate issue; that is, whether the Plaintiff was disabled, controlling weight may never be given because that decision remains for the Commissioner alone. Id.

Two non-examining state agency physicians opined that the Plaintiff retained the RFC to do light work. [Tr. 362; 404]. "The ALJ was required to consider the opinion[s] of th[ese] 'highly qualified' [physicians] who [are] 'expert[s]' in Social Security disability evaluations." Geiger v. Astrue, 2013 WL 317564 **6 (W.D.Va. 2013). "Where the opinion of a non-examining state agency physician is consistent with the record it can be relied upon." Rose v. Astrue, 2012 WL 6026473 **6 (E.D.Va. 2012). Here, the ALJ stated that the opinions of the state agency medical consultants were given significant weight as they were "strongly supported" by more recent medical records. [Tr. 17]. The Plaintiff's assignment of error is therefore rejected.

Rose, 2012 WL 6026473; Moore v. Astrue, 2012 WL 5906691 **15 (N.D.W.Va. 2012); Arthur v. Astrue, 2012 WL 4890374 **9 (D.S.C. 2012).

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 15] is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED** and this case is hereby **DISMISSED**.

The Clerk of Court is instructed to enter Judgment.

Signed: March 5, 2013

Martin Reidinger
United States District Judge